IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA


| | |
|---|---|
| Tashon Sampson, #261273, | ) CIVIL ACTION NO. 9:09-3273-DCN-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Director Jon Ozmint, Captain Ronnie Cribb, | ) |
| Andy Davis, Lt. Andy Davis and | ) |
| capacity and her official capacity; | ) |
| C. James, Grievance Coordinator, | ) |
| | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, <u>pro se</u>, pursuant to 42 U.S.C. § 1983. [1]

Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his

constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P. on April 23, 2010. As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered

by the Court on April 28, 2010, advising Plaintiff of the importance of a motion for summary

judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that

if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on

May 27, 2010, to which the Defendants filed a reply memorandum on June 7, 2010, and Plaintiff filed

---

[1]Plaintiff is a frequent filer of litigation in this Court. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].



a sur reply on June 25, 2010. Following an order of the Court requesting additional evidence, Defendants submitted an additional affidavit on October 22, 2010.

Defendants' motion is now before the Court for disposition.[2]

## Background and Evidence

Plaintiff alleges in his verified complaint[3] that on August 18, 2008 he was asked by the Defendant Davis (a correctional officer) to move to Cell 45 on the North wing of the Special Management Unit (SMU). Plaintiff concedes that he refused to obey Davis' instructions, resulting in Davis spraying mace which, according to the allegations of the Complaint, got on the Plaintiff, all of Plaintiff's belongings, and on the walls and ceiling of Plaintiff's cell. Plaintiff alleges that he then burst the sprinkler mounted into the cell wall, which got his foam/cotton mattress wet. Plaintiff alleges that he was then placed in the restraint chair for four hours for bursting the sprinkler, following which he was placed in SMU Cell 45. Plaintiff alleges that on August 19, 2008, "Sgt. Anderson" came to Cell 45 and told him to pack up his belongings because he was moving back to Cell 108 in the South wing. Plaintiff alleges that the reason he was moved to Cell 108 was because

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



the Defendant Davis "lied" about the room change.[4]

Plaintiff alleges that on August 21, 2008, he asked Davis if he could have his property and mattress back because he had been in a controlled cell for seventy-two hours.[5] Plaintiff alleges that when he told Davis that his mattress was in front of Cell 145, Davis responded that "the only mattress that you are going to get is already in there with you. I am going to teach you about popping sprinklers." Plaintiff alleges that when he stopped Davis again a few hours later to ask about his mattress, Davis returned "a few minutes later" with a cotton/foam mattress that was "dripping wet with water". Plaintiff alleges that Davis told him: "You destroyed your mattress. You see it? You are not getting this mattress back because it is wet and I can't get another one." Plaintiff alleges Davis told him to "write commissary for a mattress if you want another one", and that approximately five minutes later he observed Davis throwing his mattress in the trash can.

Plaintiff alleges that on August 24, 2008 he was charged with failure to obey a direct order and destruction to state property, and had to pay Eighty Dollars restitution for bursting the sprinkler. Plaintiff alleges that he was still asking for the return of his property, and that on August 26, 2008, while he was taking a shower, he told "Cpl. McBride" that "the only way I am getting out of the shower is if I get my property or have me a room in supermax." Plaintiff alleges that a few minutes later Davis brought him his belongings, consisting of legal work, pictures, and letters, all of which were "mildewed and wet." Plaintiff alleges he did not sign anything indicating that he received

---

[4]The undersigned has made an assumption that Plaintiff is the inmate who was moved to Cell 108, although this is not clear because Plaintiff starts referring to himself in the third person in his complaint. However, it is possible Plaintiff is stating that some other inmate was moved to Cell 108, with Plaintiff supposedly going to Cell 145. Alternatively, Plaintiff may be saying that he was told he was going to Cell 145, but was actually taken to Cell 108.

[5]Cell 108 is apparently a controlled cell.



his property, because no inventory had been done as required by prison policy. Plaintiff alleges that he also again asked Davis about a mattress, and Davis responded by asking Plaintiff if he had written the commissary. When Plaintiff said that yes, he had written the commissary, Davis told him that "you will get it. Until then you will be sleeping on cold steel."

Plaintiff alleges that between August 25, 2008 and September 1, 2008, he wrote Associate Warden Bell, Associate Warden Brooks, and Warden Padula about obtaining a mattress, and was told by all three that he needed to make his request to the Unit Manager, Mr. Oberman. Plaintiff alleges that he wrote Oberman about not having a mattress, and that Oberman forwarded his request to the SMU Captain (the Defendant Captain Cribb) on September 1, 2008. Plaintiff alleges that he received a response from Cribb on September 22, 2008 which stated: "You destroyed your mattress in flooding. (No replacement)."

Plaintiff alleges that he grieved the issue of not receiving a mattress on September 1, 2008 (LCI 2713-08), but that his grievance was returned to him unprocessed for failing to attempt an informal resolution. Plaintiff alleges that he filed two more grievances, which were also returned unprocessed. Plaintiff alleges that he then filed a grievance asserting that the Defendant James, the Grievance Coordinator, was biased and prejudiced against him. This grievance was accepted, and Plaintiff received a Step II[6] response which stated: "Captain Cribb, SMU Captain, verified that you have a mattress in your possession." Plaintiff alleges, however, that he "never received a mattress

---

[6]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step I), the inmate may then appeal the Warden's decision by filing a Step II appeal with the Division Director of Operations. See Aloe Creme, 425 F.2d at 1296; see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



from the date of August 18, 2008 til date."[7]

Plaintiff has attached to his complaint a copy of a Request to Staff member form dated September 22, 2008, wherein he requested a mattress, bearing a response dated September 23, 2008: "You destroyed your mattress during your flooding. (No replacement)." Plaintiff has also submitted copies of four (4) Step I grievances, three (3) of which (LCI 2713-08, LCI 2832-08 and LCI 2859-08) deal with his attempts to obtain a mattress. The first grievance, dated September 1, 2008, was returned unprocessed because his attempt at an informal resolution was deemed "Insufficient". The other two grievances were returned unprocessed because they were filed more than fifteen days from the date of the occurrence, outside the period for filing a grievance. Plaintiff's grievance where he complains about grievance coordinator James (LCI 2897-08) was also attached (both Step I and Step II). This grievance was denied, with the decision and reason provided, in part, being as follows: "Cpt. Cribb, SMU Captain, verified you have a mattress in your possession." The final decision in this Step II grievance is dated March 9, 2009.

Plaintiff seeks monetary damages from the Defendants for their actions. <u>See generally</u>, Verified Compliant with attached exhibits.

In support of summary judgment, the Defendants have submitted an affidavit from Mary Coleman, who handles inmate grievances for the South Carolina Department of Corrections. Coleman attests that with respect to LCI 2713-08 and LCI 2746-08[8], these grievances were returned

---

[7]It is assumed Plaintiff means through the date he filed his Complaint, although again this is not clear.

[8]LCI 2746-08 (A copy of which is also attached to Plaintiff's complaint), dated September 3, 2008, was a grievance Plaintiff filed wherein he requests either a new Walkman, or to be reimbursed for his Walkman, which apparently had been confiscated from him.



to Plaintiff because he did not comply with SCDC Policy GA-01.12, Section 12.1, which requires an inmate to make an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or by discussing their complaint with staff before filing a grievance. Coleman attests that Plaintiff could have appealed the decision in these Step I grievances to the Administrative Law Court, but failed to do so. Coleman further attests that with respect to LCI 2832-08 and LCI 2959-08, Plaintiff did not comply with SCDC Policy GA-01.12, Section 13.1, which requires and inmate to file a grievance within fifteen days of the alleged incident. Coleman attests that Plaintiff could have also appealed the decision not to process these grievances to the Administrative Law Court, but failed to do so.

Coleman attests that with respect to LCI 2897-08, Plaintiff received a final response via a Step II decision, which Plaintiff appealed to the Administrative Law Court and which was subsequently dismissed. Coleman attests that Plaintiff could have appealed that decision to the South Carolina Court of Appeals or South Carolina Supreme Court, but did not do so. Coleman attests, therefore, that Plaintiff has not exhausted his administrative remedies with respect to any of the above identified grievances. Copies of these grievances are attached to Coleman's affidavit as exhibits.

Also attached to Coleman's affidavit is a copy of an SCDC staff memorandum dated February 9, 2009 (which apparently is itself an attachment to Plaintiff's Step II grievance in LCI 2897-08), which states: Spoke w/Capt. Cribb, SMU Captain, to verify I/M Sampson has a mattress in his cell. I/M has a mattress. He is currently assigned to supermax." A copy of the order of dismissal from the Administrative Law Court is also attached to Coleman's affidavit. See generally, Coleman Affidavit, with attached exhibits.

The Defendant Captain Cribb has also submitted an affidavit, wherein he attests that



he is a Captain in the Special Management Unit at LCI. Cribb attests that all inmates in the Department of Corrections are afforded a mattress unless the inmate is placed on Crisis Intervention, wherein they are provided with padding. Cribb attests that Plaintiff was not in the LCI SMU under Crisis Intervention. Cribb attests that on August 18, 2008, Plaintiff was charged with Refusing or Failing to Obey, and Damaging or Destruction of State Property. Cribb attests that on that date Plaintiff was ordered to pack his belongings to be moved to a different cell, but that Plaintiff refused and then broke a sprinkler head off in his cell, causing the cell to flood with water. Cribb has attached to his affidavit copies of Incident Reports dated August 18, 2008 describing what occurred that day. Cribb attests that, as a result of Plaintiff's conduct, his property was soaked in water and Plaintiff's assigned mattress was destroyed.

Cribb attests that inmates are assigned a mattress once they arrive at LCI, and take these mattresses with them to whatever housing assignment they receive. As such, when an inmate is placed in LCI's SMU, the inmate must take his mattress with him. Cribb further attests that if an inmate destroys his mattress while in LCI's SMU, a new mattress is immediately requisitioned, but that this process can take time due to the lack of available mattresses at LCI. Cribb further attests that, due to budget constraints, there are not enough mattresses to give to every inmate who needs a new mattress, and that until an inmate transfers, dies or is released from LCI, a new mattress will not be available for an inmate who destroys his mattress. However, a replacement mattress of foam or cotton is given to the inmate for his use until a new mattress is available, to go with the inmate's assigned bed linens. Cribb attests that this foam or cotton replacement, along with bed linens, gives inmates a cushion to sleep on until such time as a regular mattress can be provided.

Cribb attests that he has no recollection of Plaintiff not having a foam or cotton



mattress for an extended period of time, nor does he have any recollection of Plaintiff lodging any complaints that he was in pain or injured as a result of not having a regular mattress. Cribb further attests that he personally confirmed on more than one occasion that Plaintiff does in fact have a mattress to sleep on, and that it is not the policy of the SMU or staff to deprive inmates of mattresses. See generally, Cribb Affidavit, with attached exhibits [Incident Reports dated August 18, 2008, Inmate Disciplinary System Forms dated August 24, 2008, and Cost Estimate dated September 12, 2008]. In the supplemental affidavit submitted October 22, 2010, Cribb attests that, while he does not know the exact date Plaintiff was provided with a replacement mattress, Plaintiff was provided with a replacement mattress, and that Plaintiff was not deprived of a mattress for an extended period of time. Cribb further attests that he walks the SMU every day that he is working, and that he would not allow an inmate to go without a mattress for an extended period of time. See Cribb Supplemental Affidavit.

The Defendants have also submitted an affidavit from Bruce Oberman, who attests that he is the Administrator of the SMU at LCI. Oberman attests that if an inmate destroys his mattress while in the SMU, a new mattress is immediately requisitioned, but that this process can take time due to the lack of available mattresses at LCI. Oberman further attests that a replacement mattress of foam or cotton would be given to the inmate for his use until a new or good condition used mattress is available, which along with bed linens gives the inmate a cushion to sleep on until such time as a regular mattress can be provided. Oberman attests that he has no recollection of Plaintiff not having a foam or cotton mattress for an extended period of time, nor does he have any recollection of Plaintiff lodging any complaints that he was in pain or injured as a result of not having a regular mattress. See generally, Oberman Affidavit.



An affidavit from Commissary Director Hancock has also been provided, wherein Hancock attests that all inmates in the Department of Corrections are issued a mattress and bed linens, and that if an inmate destroys his mattress while in the SMU, a new mattress is immediately requisitioned, which can take time due to the lack of available mattresses. Hancock attests that, due to budget constraints, there are not enough mattresses to give to every inmate who needs a new mattress, and that the Department has limited resources with which to purchase new mattresses. Mattresses are also not stockpiled in LCI's commissary. Hancock attests, however, that in the interim a foam or cotton mattress is provided to the inmate. See generally, Hancock Affidavit.

Finally, the Defendants have submitted a copy of Plaintiff's medical records covering the period May 2005 through April 2010. These medical records reflect an encounter on September 2, 2008, in which Plaintiff complained of back and neck pain from sleeping on a steel bed. Plaintiff reported that he had broken the sprinkler head in his room, resulting in his cell being "stripped out", and that he had not gotten his mattress back yet. In a second encounter dated October 21, 2008, Plaintiff was still complaining of not having a mattress. However, Plaintiff reported no difficulties with sleep on November 26, 2008, and again on February 25, 2009, although Plaintiff stated on that date that he had not "had a good mattress in a long time. That is why my back is hurting me." His medical encounters after that date do not again reference any complaints about a mattress until April 28, 2009, where Plaintiff complains about "back pain from not having an adequate mattress."

As attachments to his memorandum opposing summary judgment, in addition to copies of the grievances already provided, Plaintiff has attached Requests to Staff member forms dated August 25, 2008, September 1, 2008, September 2, 2008, September 9, 2008 and September 22, 2008, all complaining about not having a mattress. Plaintiff has also attached another copy of his



medical records.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Exhaustion of Administrative Remedies)

Defendants first argue that this action should be dismissed for failure of the Plaintiff to exhaust his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative



procedures." <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); <u>see Porter v. Nussle</u>, 534 U.S. 516 (2002);

<u>Jones v. Smith</u>, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed

futility]; <u>Larkin v. Galloway</u>, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff

claimed he was afraid]; <u>see also</u> <u>Claybrooks v. Newsome</u>, No. 00-7079, 2001 WL 1089548 (4th Cir.

Sept. 18, 2001) (unpublished opinion) [applying <u>Booth v. Churner</u> to affirm district court's denial of

relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first

have exhausted the administrative remedies that were available to him at the prison.

    The Defendants have the burden of showing that Plaintiff failed to exhaust his

administrative remedies. <u>See</u> <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683

(4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be

both pled and proven by the Defendant]; <u>Jones v. Bock</u>, 549 U.S. 199 (2007). To meet this burden,

Defendants have submitted the affidavit from Mary Coleman in which Coleman details the attempts

Plaintiff made to grieve this matter, and attesting that Plaintiff failed to exhaust his administrative

remedies prior to filing this lawsuit. <u>See</u> <u>Hyde v. South Carolina Dep't of Mental Health</u>, 442 S.E.2d

582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of

fact, one must purse the administrative remedy or be precluded from seeking relief in the courts"].

However, the undersigned does not find that the Defendants are entitled to summary judgment on this

ground.

    First, an inmate does not ordinarily need to pursue his administrative remedies past

the Step II grievance decision in order to exhaust his administrative remedies. <u>See</u> <u>Johnson v.</u>

<u>Ozmint</u>, 567 F.Supp.2d 806, 820, n.5 (D.S.C. 2008); <u>Duncan v. Langestein</u>, No. 07-268, 2008 WL

153975 at * 5 (D.S.C. Jan. 14, 2008) (citing <u>Charles v. Ozmint</u>, No. 05-2187, 2006 WL 1341267 at



* 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step II grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007). Rather, if the prisoner is not satisfied with the response of the Step II SCDC official, he may then file a complaint in Federal District Court about the matters raised in his grievance.[9]  Therefore, to the extent the Defendants are arguing that Plaintiff had to take his grievances to the Administrative Law Court in order to exhaust this remedy, their argument is without merit.

Further, from a review of both the Defendants' and Plaintiff's exhibits, it is readily apparent that Plaintiff discussed his desire for a new mattress with Defendant Davis on numerous occasions prior to filing his initial grievance on September 1, 2008, to no avail.  With respect to LCI 2713-08, which Defendants do not contest was timely filed, while the "action taken" section of Plaintiff's Step 1 grievance indicates that it was being returned to him unprocessed because his attempts at an informal resolution had been deemed "insufficient", Plaintiff states in the grievance itself that he had contacted the warden, two associate wardens, and Mr. Oberman concerning his complaints prior to filing his grievance.  Grievance coordinator James deemed this to be "insufficient" because Plaintiff did not state on his form when he had written those individuals, or what their response was.  Plaintiff's Request to Staff forms (attached to his opposition to summary

---

[9]If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process and also appeal the Step II decision to the state ALJ Division before his remedies may be said to be exhausted.  See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973).  Plaintiff is not challenging his disciplinary conviction in this case.



judgment), reflect that he had contacted these individuals on August 25, 2008 (Bell) and September 1, 2008 (Padula, Brooks, and Oberman). Bell's response (to the Request to Staff dated prior to the grievance) is not dated until October 16, 2008, which would have been outside the fifteen days required for submission of a Step 1 grievance. The Request to Staff to Brooks does not indicate that Plaintiff ever received any response, while the request to Padula has a response dated September 4, 2008,wherein he states he is referring the matter to Oberman. The response from Oberman, which is dated September 6, 2008, indicates that he is referring the matter to Cribb. A separate Request to Staff member form addressed to Cribb has a response date of September 23, 2008, which again would have been outside the requisite fifteen day period. In any event, the filing of a Request to Staff form was not even necessary, as Coleman states in her affidavit that Plaintiff could have satisfied his informal resolution requirements simply by discussing his complaint with staff. Plaintiff attests in his verified complaint that he did so, in particular by talking with Cribb, but also by contacting several other people. See also, Plaintiff's Exhibits [Request to Staff forms].

Based on the evidence before the Court, the undersigned cannot find that no genuine issue of fact exists as to whether Plaintiff attempted to exhaust his administrative remedies with respect to this claim prior to filing this lawsuit. Rather, the evidence with respect to Plaintiff's attempts, and the refusal to accept his grievances by the Grievance Branch, is sufficient to allow him to proceed at this time. Cf. Hill v. O'Brien, No. 09-6823, 2010 WL 2748807 at * * 3-4 (4th Cir. July 12, 2010); Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; Stenhouse v.



13

<u>Hughes</u>, No. 9:04-23150, 2006 WL 752876, at * 2 (D.S.C. March 21, 2006)["[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies"]; <u>Frierson v. Bell</u>, No. 09-54, 2010 WL 3878732, at * 4-5 (D.S.C. Sept. 28, 2010). Therefore, the Defendants are not entitled to summary judgment on this ground. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)[At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"]; <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d at 683 [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant].

## II.

### <u>(Merits of Plaintiff's Claim)</u>

With respect to the merits of Plaintiff's claim, as employees of the Department of Corrections, the Defendants are all subject to suit for damages under § 1983 in their individual capacities. <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980); <u>Inmates v. Owens</u>, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is seeking damages against these Defendants in their individual capacities. Nonetheless, after careful review of the filings in this case as well as the arguments of the parties, the undersigned finds and concludes that Plaintiff's claim is without merit, and that the Defendants are therefore entitled to summary judgment.

In order to establish a violation of his constitutional rights, Plaintiff must have evidence not only showing that his living conditions violated contemporary standards of decency, but that prison officials also acted with deliberate indifference to such conditions. The first of these factors, known as the "objective" component, requires a showing that the alleged deprivation was



"objectively sufficiently serious" such that the conditions denied the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>see</u> <u>also</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1993). The second factor, the "subjective" component, requires Plaintiff to show that prison officials acted with deliberate indifference to this "sufficiently serious" deprivation. <u>Farmer</u>, 511 U.S. at 834. This second component requires more than mere negligence by a named Defendant. Rather, Plaintiff must have evidence showing a reckless disregard by a Defendant of a substantial risk of serious harm. <u>Id</u>., at 835-836.

With respect to the objective component, it is clear that merely being deprived of a mattress for a short period of time does not amount to a <u>per</u> <u>se</u> violation of a prisoner's constitutional rights where there is no resulting serious injury. <u>Cf</u>. <u>Grissom v. Davis</u>, 55 Fed.Appx. 756, 757-758 (6th Cir. 2003) [No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de minimis physical injury]; <u>Lopez v. South Carolina Dept of Corrections</u>, No. 06-2512, 2007 WL 2021875, at *3 (D.S.C. July 6, 2007) [Dismissing claim by prisoner that he was not provided, in part, with a mattress, where prisoner failed to assert significant physical or emotional injury]; <u>Eady v. Sawyer</u>, No. 02-1225, 2005 WL 2206249, at *5 (S.D.Ill. Sept. 12, 2005) [case dismissed where, although Plaintiff may have experienced some discomfort, he made no viable claim of physical harm suffered due to temporary lack of mattress or pillow]; <u>McGoldrick v. Farrington</u>, 462 F.Supp.2d 112, 113-114 (D. Me. 2006); <u>Schroeder v. Kaplan</u>, No. 93-17123, 1995 WL 398878, * 2 (9th Cir. July 7, 1995)[No mattress for approximately one month held not to be unconstitutional]. Here, however, the amount of time Plaintiff was deprived of a mattress is not clear in the evidence presented to the Court. Indeed, it is even unclear whether the parties are talking about Plaintiff being



deprived of just a regular mattress during much of the time period at issue, or whether Plaintiff was not given a mattress at all (even the temporary foam mattress that was supposed to have been provided to Plaintiff pending his receipt of a regular mattress).

Plaintiff initially speaks of not having a mattress at all, and of having to sleep on "cold steel". Considered in the light most favorable to the Plaintiff, the response shown on the Request to Staff form dated September 23, 2008 ["You destroyed your mattress during your flooding. (No replacement)] and Plaintiff's comment to the nurse contained in the medical note of October 21, 2008 [wherein Plaintiff was still complaining about not having a mattress], are sufficient to create a question of fact as to whether Plaintiff had not received a new or even a temporary substitute mattress by at least late October 2008. However, it is also apparent from the evidence that at some point Plaintiff did receive at least a temporary foam mattress, as the staff memorandum of February 9, 2009 states that Cribb had verified that Plaintiff had a mattress in his "supermax" cell, and the Step II response to Grievance LCI 2897-08, dated March 9, 2009, again states that Captain Cribb had "verified you have a mattress in your possession." Plaintiff is also noted in his medical encounter of February 25, 2009 to complain that he had not had a "good mattress" in a long time, and in his encounter of April 28, 2009 to be complaining about not having an "adequate mattress", while in his memorandum opposing summary judgment he states that he finally received an "adequate" mattress on April 30, 2010, when he received the mattress of another inmate who had been released.

Therefore, it is readily apparent that Plaintiff did, at some point, receive some type of mattress, although precisely when that occurred is unknown, as Plaintiff fails to clarify this matter and the Defendants are unable in their evidence to establish the date on which Plaintiff received either



a temporary or regular replacement mattress.[10]  While the allegations in Plaintiff's verified complaint could be read as asserting that Plaintiff had not received *any* type of mattress as of the date of his complaint (October 27, 2009), based on the cited evidence the Court is not required to accept this unsupported assertion.  <u>Silvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].  Rather, the evidence (considered in the light most favorable to the Plaintiff), shows that Plaintiff destroyed his regular mattress on August 18, 2008, following which he was placed in a "controlled cell" for 72 hours, where he had no mattress.  Plaintiff was then placed in another cell in the SMU, where he continued to not have a mattress through at least late October 2008 (a total of about two (2) months).  Thereafter, the evidence reflects that Plaintiff received some type of mattress (whether a temporary foam type mattress or a regular mattress that Plaintiff still did not consider "adequate"), some time between late October 2008 and the beginning of February 2009, which he then retained until April 30, 2010, when he received the mattress (which Plaintiff considered to be an "adequate" mattress) of another inmate who had been released.  The question, then, is whether this evidence is sufficient to show a violation of Plaintiff's constitutional rights.

Under the applicable caselaw, being deprived of a mattress for several months could, under some circumstances, rise to the level of a constitutional violation.  <u>Cf</u>. <u>James v. Davis</u>, No. 05-

---

[10]The main objective of the Court's Order of October 14, 2010 was to have evidence submitted showing exactly when Plaintiff received what type of mattress. However, the supplemental affidavit filed as a result of that Order fails to clarify this issue.



2733, 2006 WL 2171082, at * 2 (D.S.C. July 31, 2006).[11]  However, while the exact amount of time

Plaintiff went without being provided with at least a replacement mattress is unknown (anywhere

from two (2) to five (5) months), the evidence reflects that Plaintiff was only kept in a "stripped out"

cell for a few days before being transferred to a regular cell.  On November 26, 2008 Plaintiff

reported that he was having no difficulties with appetite or his sleep patterns, and no evidence has

been presented to show that, other than not having at least a temporary foam mattress (for what period

of time is unclear), Plaintiff suffered any other deprivations, such as being kept unclothed or in an

unusually cold cell, or was denied such items as a blanket, basic hygiene supplies, or other such

creature comforts.  Cf. Schroeder, 1995 WL 398878, * 2 ["In the majority of decisions where the

court considered whether failure to provide a mattress to an inmate violated the Eighth Amendment,

the failure was accompanied by other factors - e.g., extreme cold, lack of sanitary conditions, solitary

confinement, inadequate clothing, or improper diet"]; James, 2006 WL 2171082, at * 2 [Finding that

dispute involved not whether Plaintiff was just deprived of a mattress for a period of five months, but

whether he had been deprived of both a mattress as well as other items of clothing and bedding];

Wilson v. Seiter, 501 U.S. 294, 304-305 (1991)[Finding that some conditions of confinement may

establish an Eighth Amendment violation "in combination" with other adverse conditions, but may

not do so standing alone].

        Further, and significantly for Plaintiff's claim, while not being provided a mattress for

an extended period of time could possibly, even standing alone, perhaps rise to the level of a per se

---

[11]For example, if Plaintiff was still without a mattress, he might be able to obtain injunctive relief to be provided with one, even in the absence of any compensable damages.  Cf. Muhammad v. Director of Corrections, No. 07-375, 2008 WL 958075 (E.D.Cal. Apr. 8, 2008)[Noting that injunctive relief may be available to obtain a mattress under some circumstances].  However, Plaintiff concedes in his reply memorandum that he now has an "adequate" mattress.



constitutional violation under some circumstances, there is no evidence in this case that Plaintiff suffered any injuries of a constitutional magnitude as a result of either not having a mattress at all (for some period of time, but apparently in excess of at least two (2) months) or of having to sleep on a temporary foam mattress until he received a regular mattress. See Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required]; Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]. Rather, the medical evidence before this Court reflects that Plaintiff experienced some back pain as a result of not having a mattress through at least October 21, 2008, but was in no acute distress and was given some ibuprofen and told to use a rolled towel under his back for a few days. No serious medical issues related to this issue are reflected thereafter.

In sum, there is no indication in Plaintiff's medical records that he suffered any serious or permanent injury as a result of this deprivation, Plaintiff has himself submitted no such evidence, nor does he allege any permanent or even significant injury in his verified complaint. Grissom, 55 Fed. Appx. at 757-758 [Finding complaint subject to dismissal where Plaintiff failed to present any evidence that mattress restriction caused her to suffer serious harm]; Shakka v. Smith, 71 F3d 162, 166 (4th Cir. 1995)[To demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment conditions claim, a prisoner must produce evidence of a serious or significant injury resulting from the challenged conditions]; Beverati v. Smith, 120 F.3d 500, 505, n. 5 (4th Cir. 1977)[finding that inmate's alleged confinement for six months in deplorable conditions failed to state Eighth Amendment claim where there was no evidence that conditions "resulted in

19



serious physical or emotional injury or the grave risk of such harm"]. Indeed, *Plaintiff does not allege in his verified complaint that he suffered any injury whatsoever*, nor do any of the grievances and/or Requests to Staff member forms attached to Plaintiff's complaint or submitted separately as exhibits reflect that Plaintiff suffered any significant injury as a result of not having a regular mattress. Lopez, No. 06-2512, 2007 WL 2021875, at *3 [Dismissing claim by prisoner that he was not provided, in part, with a mattress, where prisoner failed to assert significant physical or emotional injury]; Eady, 2005 WL 2206249, at * 5 [Summary judgment granted where, "[a]lthough Plaintiff may have experienced some discomfort, he makes no allegations that he suffered any physical harm due to a temporary lack of a mattress or pillow"]. This lack of any evidence, or even allegation, of a constitutionally compensable injury is fatal to Plaintiff's claim. Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does].

Finally, by reaching the conclusion that no compensable *constitutional* violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's claim that he was not given a proper mattress to sleep on, notwithstanding the undisputed fact that it was the Plaintiff who placed himself in that situation by his own conduct. Prison officials should strive to provide prisoners with adequate living arrangements, even accepting that prisoners will often times make this goal difficult and even costly. This does not, however, mean that a violation of the Constitution has occurred. Hence, while Plaintiff may have some state law claim he could pursue with regard to not having been provided with a regular mattress for an extended period of time, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned



does not find that Plaintiff has presented a genuine issue of fact as to whether his constitutional rights were violated sufficient to survive summary judgment. See <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; <u>see</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, Plaintiff's 1983 claim for monetary damages based on not having regular mattress for an extended period of time while housed in the SMU at the Lee Correctional Institution should be dismissed.

**<u>Conclusion</u>**

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 2, 2010
Charleston, South Carolina



21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

